IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOWARD PAULL,<br><br>      Plaintiff,<br><br>v.<br><br>PRUDENTIAL INSURANCE COMPANY OF AMERICA and KPMG LLP,<br><br>      Defendants. | Civil Action No. |

## COMPLAINT

Plaintiff Howard Paull ("Plaintiff" or "Mr. Paull") brings this action against Prudential Insurance Company of America ("Prudential") and KPMG LLP ("KPMG") under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et. seq*. He seeks appropriate remedies as a result of the wrongful termination of short term disability ("STD") benefits and denial of his claim for long term disability ("LTD") benefits under the KPMG LLP Short and Long Term Disability Insurance Plan (the "Plan"), sponsored by his former employer, KMPG, and underwritten and administered by Prudential.

### I. PARTIES

1. Mr. Paull is, and at all relevant times was, a citizen of the United States and a resident of Philadelphia County in this District.

2. Prudential is an insurance company domiciled in New Jersey located at 751 Broad Street, Newark, NJ 07102. It issued Group Contract Number G-43764-DE (the "Policy") to KPMG to insure the STD and LTD benefits provided by the Plan. Prudential is the claims administrator and also pays benefits under the Policy.

3. KPMG is one of the "Big Four" accounting firms, providing financial audit, tax, and advisory services. KPMG is domiciled in New Jersey and located at Three Chestnut Ridge Rd., Montvale, NJ 07645. KPMBG is both the sponsor of the Plan, an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(3), and the plan administrator, within the meaning of 29 U.S.C. § 1002(16).

4. As an employee of KPMG, Mr. Paull was insured under the Policy and a "participant" within the meaning of ERISA, 29 U.S.C. § 1132(a).

## II.  JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e) and (f) and 28 U.S.C. § 1331.

6. Venue over this action lies in this Court pursuant to 29 U.S.C. § 1132(e)(2).

## III.  FACTUAL BACKGROUND

### Mr. Paull's STD benefit claim

7. From July 6, 2015 until he became disabled, Mr. Paull was employed by KPMG as a tax manager.

8. The tax manager position is mentally demanding and requires "in-depth knowledge or tax issues within practice" and "basic knowledge of tax issues outside immediate tax area," as well as "the ability to interface with clients and communicate complex tax matters . . . in a manner [the] client can understand," "the ability to manage multiple client engagements and service teams," "strong written and verbal communication skills," "solid research skills," and "consistent ability to . . . balance and direct multiple projects with differing deadlines."

9. In July of 2017, Mr. Paull began experiencing a sudden and severe headache, watery eyes, sore throat, cough, and muscle aches.

10. As a result, Mr. Paull went to an urgent care clinic, where he was diagnosed with bacterial pneumonia and provided antibiotics.

11. Mr. Paull was subsequently diagnosed with hypersensitivity pneumonitis, that is, lung disease due to allergic reaction, by Dr. Paul Kinniry at the University of Pennsylvania Hospital. Mr. Paull's hypersensitivity pneumonitis was associated with an allergy to mold—specifically, aurenbasidium pullulans—which was present in his office.

12. Ultimately, while his lung function improved, Mr. Paull continued to experience cognitive difficulties with focus and concentration that made it impossible to do his job, and ultimately his last day of work was January 21, 2018.

13. On or around January 31, 2018, Mr. Paull applied for STD benefits under the Policy.

14. In order to receive STD benefits under the Policy, a claimant must be "Disabled."

15. As set forth in the Policy, "You are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20% or more loss in weekly earnings due to the same sickness or injury."

16. In support of his claim, Mr. Paull's treating neurologist, Dr. Branch Coslett, noted that Mr. Paull was suffering from "cognitive deficits – poor focus, concentration, easy fatigue." Dr. Coslett further noted that the "prognosis is guarded. No specific [diagnosis] to date."

17. Prudential approved Mr. Paull's claim for STD benefits, finding that he was "unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury".

18. Mr. Paull underwent a neuropsychological evaluation on January 25, 2018 by Dr.

Kathy Lawler.

19. In her report dated February 5, 2018, Dr. Lawler opined that anxiety and stress were impacting Mr. Paull's ability "to fully access [his] cognitive abilities."

20. By the time of a visit dated April 10, 2018, Dr. Coslett opined that Mr. Paull was "exhibiting non-specific neuropsychiatric symptoms (e.g., problems with focus, concentration, sustained focus, anxiety) that are consistent with encephalopathy." Dr. Coslett observed that these symptoms may have been caused by Mr. Paull's hypersensitivity pneumonitis but that "*[r]egardless of the etiology of the symptoms, however, I believe that his current symptoms are disabling for his occupation as an attorney*."

21. Prudential paid STD benefits to Mr. Paull until April 13, 2018.

22. By letter dated May 23, 2018, Prudential notified Mr. Paull that it had terminated his claim and that he was no longer considered disabled.

23. Mr. Paull appealed that decision by letter dated August 31, 2018.

24. In support of his appeal, Mr. Paull included a letter from Dr. Coslett dated August 20, 2018, in which he again opined that "*Mr. Paull's symptoms of difficulty with focus and concentration, manifesting at least in part as an inability to use his computer for extensive periods of time . . . are, in my opinion, inconsistent with the ability to function effectively as a tax manager as this task requires extensive use of a computer as well as reading and writing many hours of each work day*."

25. Despite Dr. Coslett's opinion, by letter dated November 2, 2018, Prudential upheld the termination of STD benefits.

26. Mr. Paull undertook a second voluntary appeal by letter dated April 2, 2019.

27. In support of his second voluntary appeal, Mr. Paull provided another

4

neuropsychological evaluation report, this one dated December 8, 2018 by Dr. Robert L. Rider, Ph.D. and Katie Fabius, PsyD, who diagnosed Mr. Paull with "Generalized Anxiety Disorder" and opined that while "Mr. Paull's results show him to be of Above Average intellect at present" and "His visual, verbal, and working memory abilities were largely commensurate with his general intellect", "*He showed weaknesses consistent with his presenting complaints in the areas of complex attention, processing speed, and inhibition which are likely representative of a decrease from his baseline function*."

28. The report went on to state that "the physical symptoms of the aurenbasidium pullulans hypersensitivity served to exacerbate his preexisting anxiety to a level severe enough to interfere with his cognitive performance. . . . Anxiety is known to contribute to cognitive difficulties, particularly in the domains of attention, processing speed, and executive function. . . . I believe Mr. Paull notices his symptoms most prominently when he is at work or engaging in work duties, such as using the computer, due to the stress and anxiety he feels at his job. . . . *At this time, due to the severity of his anxiety, I believe Mr. Paull is unable to perform the duties required of him at his current position at KPMG."*

29. Nevertheless, by letter dated June 21, 2019, Prudential upheld the denial of STD benefits.

### Mr. Paull's LTD benefit claim

30. Mr. Paull subsequently initiated a claim for LTD benefits under the Policy.

31. In order to receive LTD benefits under the Policy, a claimant must be "Disabled."

32. As set forth in the Policy, for the first 36 months LTD benefits are payable, "You are disabled when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and you have a 20%

or more loss in weekly earnings due to the same sickness or injury."

33. In addition to the material submitted in connection with his STD claim, which he made part of his LTD claim, Mr. Paull pointed out that in a report dated January 20, 2020, Dr. Coslett had opined that "Mr. Paull suffers from cognitive and emotional deficits" and that "his stressful and demanding position as a tax manager for KPMG is likely to substantially exacerbate his deficits in focus, concentration and sustained attention."

34. Despite the evidence demonstrating that the same difficulties with attentional focus and concentration that Prudential had found initially disabled Mr. Paull from performing in his "regular occupation" as a tax manager for KPMG remained, Prudential denied Mr. Paull's claim for LTD benefits by letter dated March 24, 2020.

35. On December 21, 2020, Mr. Paull appealed the denial of LTD benefits.

36. In support of his appeal, he submitted a "Quantitative EEG" or "QEEG" neurodiagnostic evaluation completed on November 23, 2020.

37. The QEEG evaluation "performs analysis of brainwave characteristics such as frequency, amplitude, absolute power, relative power, ratios, coherence symmetry and phase" and "[r]esults are compared to normative data for age, gender and left/right handedness."

38. Mr. Paull's QEEG report indicated "Deficits in expressive communication and executive functions [that] are likely due to impairment" at the frontal area and right parietal region of the brain. The QEEG report also noted "Relative power deficits in frontal theta would again impair organized conceptualization" and "Bilateral hypocoherence across all bands implies potential neuromuscular challenges and difficulty with organization and self expression".

39. The QEEG report concluded that despite the lack of a traumatic brain injury or TBI, "there are notable amplitude abnormalities identified which imply lateral impact or

neuroinflammatory activity."

40. Mr. Paull also submitted a letter from Dr. Coslett in which he opined that the finding in the QEEG analysis of "notable amplitude abnormalities . . . is consistent with my belief . . . that Mr. Paull suffers from encephalopathy, whatever its root cause."

41. Dr. Coslett also opined in his letter that "a number of specific abnormalities" identified in the report "are consistent with my opinion . . . that Mr. Paull has suffered substantial impairments in 'executive' functions (that is, focus, concentration, sustained attention and multitasking)" and that "the findings indicate that these impairments persist to date."

42. In addition, Mr. Paull also submitted a letter from his therapist, Dr. Joseph Altobelli, in which Dr. Altobelli observed that "Mr. Paull suffers from anxiety as well as deficits in task completion in the areas which call for central processing and executive functioning. . . ."

43. Dr. Altobelli noted that Mr. Paull's "exposure to mold and subsequent encephalopathy have left him with certain cognitive deficits that make normal daily functioning a challenge" including "focal deficits such as sustained focus during reading and writing, initiating task completion, inability to work on a computer for any amount of time, slowed processing and thinking, and an inability to juggle multiple tasks." He went on to note that "[t]his inability is in stark contrast to Mr. Paul's report of his previous abilities pre-mold exposure. The decrease in functioning increases Mr. Paull's anxiety, which further compromises his cognitive abilities in a self-feeding cycle."

44. Like Dr. Coslett, Dr. Altobelli also agreed that Mr. Paull's QEEG report was consistent with his self-reports of impaired cognitive disabilities, opining ". . . The results indicated frontal lobe and right parietal region deficiency which rise to clinically significant weaknesses and are most likely responsible for the functional impairments Mr. Paull is reporting,

mainly organized conceptualization, unmanaged anxiety, self-expression and delayed responsiveness."

45. By letter dated March 5, 2021, Prudential informed Mr. Paull that it had obtained paper records reviews of his LTD claim file by Dr. Sarah Bullard, a psychologist, and Dr. David Burke, a neurologist, both of whom concluded that based upon the evidence submitted, Mr. Paull was not "disabled" from performing the "material and substantial duties" of his "regular occupation" as a tax manager.

46. In response to this new information, Mr. Paull pointed out that the reviews of Drs. Bullard and Burke suffered from a number of errors, including that: (i) both relied upon prior opinions of other "peer reviewers" that did not treat Mr. Paull but were consulted by Prudential earlier in the STD or LTD claims processes, thereby violating the "full and fair review" provision of ERISA by denying Mr. Paull "a review that does not afford deference to the initial adverse benefit determination" as required by 29 C.F.R. § 2560.503-1; (ii) both misapprehended the nature and importance of the root cause of Mr. Paull's cognitive difficulties, that is, by rejecting the theory that mold exposure had caused hypersensitivity pneumonitis which in turn lead to his cognitive problems, when the cause of Mr. Paull's problems with focus and concentration was it was irrelevant under the Policy; (iii) both cherry picked from neuropsychological testing results for Mr. Paull while ignoring that the evaluations corroborated Mr. Paull's subjective reports that his cognitive abilities have declined from his previous level and that the severity of his symptoms would preclude him from working as a tax manager; (iv) Dr. Bullard based her opinion that Mr. Paull was not restricted upon a conclusion that he was able to complete activities of daily living and work as a tour guide part-time, failing to recognize that whether or not Mr. Paull's symptoms are "disabling" depends upon whether those symptoms

preclude him from performing the "material and substantial duties" of a tax manager, not whether he can work in a tour guide role or complete activities like shopping or driving; and (v) both disregarded and misapprehended the results of Mr. Paull's November 23, 2020 QEEG analysis, that is, by rejecting it as evidencing a "neurologic" cause of impairment while ignoring that the QEEG test did objectively establish that there were abnormalities that were fully consistent with Mr. Paull's subjectively reported symptoms.

47. Ultimately by letter dated May 21, 2021, Prudential upheld its decision to deny LTD benefits.

48. Mr. Paull's administrative remedies have been fully exhausted.

## IV.  CLAIMS

### COUNT I
### WRONGFUL TERMINATION OF STD BENEFITS
### ERISA § 502(a)(1)(B)

49. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

50. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Mr. Paull may bring an action to recover benefits due to him under the terms of the Policy, to enforce his rights under the terms of the Policy, or to clarify his rights to future benefits under the terms of the Policy.

51. Notwithstanding that Mr. Paull conclusively demonstrated that he is "Disabled" and entitled to STD benefits under the Policy, Prudential wrongfully terminated his benefits based solely on a review of his medical records.

## COUNT II
## WRONGFUL DENIAL OF LTD BENEFITS
## ERISA § 502(a)(1)(B)

52. The foregoing paragraphs are incorporated herein by reference as if set forth at length.

53. Notwithstanding that Mr. Paull conclusively demonstrated that he is "Disabled" and entitled to LTD benefits under the Policy, Prudential wrongfully denied his claim based solely on a review of his medical records.

## V.  RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court:

(a) Grant judgment in his favor and against Defendants on all claims;

(b) Order that Defendants pay all STD and LTD benefits due under the Policy from April 14, 2018 to the date of judgment, including interest thereon;

(c) Declare Plaintiff's rights under the terms of the Policy, and clarify his rights to future benefits under the terms of the Policy;

(d) Order that Defendants pay the costs of suit, including Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g); and

(e) Award all such other and further relief as this Court deems just and proper.

Dated: June 30, 2021               Respectfully submitted,

                                    s/ Tybe A. Brett
                                   Tybe A. Brett, Esq., PA I.D. 30064
                                   tbrett@fdpklaw.com
                                   Ruairi McDonnell, Esq., PA I.D. 316998
                                   rmcdonnell@fdpklaw.com

                                   **FEINSTEIN DOYLE PAYNE**
                                     **& KRAVEC, LLC**
                                   Law & Finance Building, Suite 1300
                                   429 Fourth Avenue

Pittsburgh, PA  15219
T.: (412) 281-8400
F.: (412) 281-1007

Adam Harrison Garner
PA I.D. 320476
adam@garnerltd.com

**THE GARNER FIRM, LTD.**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
T.: (215) 645-5955
F.: (215) 645-5960


*Attorneys for Plaintiff Howard Paull*